UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KENNETH DA'VON REYNOLDS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:16-cv-00149-JCH |
| HARRY RUSSELL, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Ronald Helms's and James Rodgers's Motion for Summary Judgment, filed on February 23, 2017. (ECF No. 45.) The Motion has been fully briefed and is ready for disposition.

**BACKGROUND**

On February 4, 2016, Plaintiff Kenneth Reynolds filed this 42 U.S.C. § 1983 action seeking monetary and injunctive relief. In his amended complaint, he asserts excessive-force claims against Defendants Helms and Rodgers based upon the following allegations.

At all relevant times, Plaintiff was incarcerated at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri, where Helms and Rodgers were employed as correctional officers. On November 4, 2014, Helms and Rodgers approached Reynolds while he was in his cell and directed him to report to the "Sally Port." Reynolds complied, and upon entering the Sally Port, Helms told Plaintiff to "cuff up." Plaintiff questioned Helms as to why he was being handcuffed. Helms refused to answer and proceeded to place restraints on Plaintiff's right wrist. Plaintiff then questioned Rodgers as to why he was being handcuffed, at which time Helms slammed Plaintiff's head into a concrete wall, leaving

1

Plaintiff with a split lip, a knot on the left side of his head, and a gash on his forehead. Plaintiff was subsequently taken to the ground, held down, and punched repeatedly. He was escorted to the medical unit shortly thereafter. Plaintiff was later issued conduct violations in connection with the incident, and he filed internal grievances regarding the use of force against him. (ECF No. 9.)

The summary judgment record reflects the following. During his deposition, Plaintiff testified that he had been in his cell when Helms and Rodgers approached him and told him to report to the Sally Port, and that once he entered the Sally Port Helms told him to submit to restraints. Upon questioning Helms as to why he was being restrained, Helms responded that he had been out of his cell in violation of ERDCC policy. He then turned to and directed the same questions to Rodgers, at which time Helms slammed him against the wall, causing his head to hit the wall. With respect to Defendants' use of force, Plaintiff further stated, in pertinent part:

> [A]fter he aggressively slammed my head—well, hit my head on the sally port, I kind of stiffen up, because I didn't know what was going on…
>
> So they took me to the ground. And in the process of me going to the ground, I was getting hit…
>
> And I stood back up. And in the process of me standing back up, well, I guess Ro[d]gers, he was calling for the white shirt or was calling a 10-5, that's what they call it…for staff assault. And he kind of retreated. And me and Helms, I was getting off the ground—I was getting off of them and Helms hit me with an uppercut while holding my hair…
>
> [A]fter he punched me twice, Ro[d]gers came and assisted to try to put me in handcuffs. But I'm—he got my right arm—Ro[d]gers has my right arm now…And by this time, both of them grabbed me to try to get me back on the ground…And my arm—they put me in handcuffs and my arm was getting twisted. I had a knee in the back of my neck. I was getting punched in my ribs. I got punched in my face…
>
> I wasn't resisting no more because I was already in handcuffs…

(Def Ex. A, ECF No. 47.1 at 23-37.)

Reynolds's ERDCC medical records indicate that he refused assessment, and that he did not appear to have any injuries. (Def. Ex. J.) ERDCC records also show that Reynolds was issued two conduct violations in connection with the incident. The first Conduct Violation Report was issued by Rodgers and stated that Reynolds had refused to comply with directives to return to his cell. (Def. Ex. D.) The second Conduct Violation Report was issued by Helms and provided the following recitation of events:

> On the above date and approximate time Offender Reynolds…was directed to the A/B sallyport. Once in the sallyport I gave Offender Reynolds several directives to submit to wrist restraints. Offender Reynolds complied by allowing me to place restraint on his right wrist…[A]t this point the offender pushed away from the wall, I then assisted Offender Reynolds back to the wall. At this time Offender Reynolds spun around striking me on the right side of my face with his elbow. Offender Reynolds was then assisted to the ground, once on the ground Offender Reynolds bit my right thumb. A 10/5 was announced and additional staff responded to assist…I received injuries for which I sought medical attention…

(Def. Ex. G, ECF No. 47.8 at 1.)

According to the sworn affidavits of Helms and Rodgers, Reynolds, prior to being taken to the Sally Port, was out of his cell in violation of ERDCC policy and had refused directives to return to his cell. (Def. Exs. B-C.) In addition, Rodgers attested that during the incident in question Reynolds elbowed Helms in the head and got a hold of Rodgers's pepper spray. (Def. Ex. C.)

**SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must

3

give that party the benefit of all reasonable inferences that may be drawn from the record. *See Hott v. Hennepin Cnty., Minn.*, 260 F.3d 901, 904-05 (8th Cir. 2001) (citation omitted).

The moving party bears the burden of showing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When a summary judgment motion is properly supported by evidence, the burden then shifts to the non-moving party who must set forth affirmative evidence showing that there is a genuine issue for trial. *See id.* at 256-57. The non-moving party may not rest on the allegations in his pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(c); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *See Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

## **DISCUSSION**

The "core judicial inquiry" in a suit for excessive use of force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citation and quotations omitted). "Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In considering an excessive-force claim, the Court is to weigh the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants, '[would] support a reliable inference' of an unnecessary and wanton

4

infliction of pain." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Johnson v. Bi-State Justice Ctr./Ark. Dep't Corr.*, 12 F.3d 133, 136-37 (8th Cir. 1993)). In weighing these factors, however, the Court is required to "avoid[ ] the improper resolution of credibility issues." *Id.*

Defendants argue that summary judgment is warranted because Reynolds "admits that Defendants used the amount of force that was necessary to respond to Plaintiff's resistance," and because Reynolds "has not put forth any evidence that Defendants used excessive force against him in contravention of prison policies." (ECF No. 46 at 2.) Defendants also argue that they are entitled to qualified immunity. *Id.*

Based upon the record before it, the Court concludes that genuine issues of material fact exist surrounding whether Defendants' use of force against Reynolds was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Contrary to Defendants assertions that Reynolds admits that Defendants used the amount of force that was necessary to respond to his resistance, Reynolds's deposition testimony indicates that he complied with directives and was submitting to restraints at the time Helms slammed him against the wall, and that Defendants continued to hit him after he was taken to the ground, placed in handcuffs, and no longer resisting. In addition, although Defendants maintain that Reynolds was taken to the Sally Port because he was out of his cell in violation of ERDCC Policy, Reynolds testified that he had been in his cell when Defendants' approached him. Furthermore, although ERDCC medical records indicate that Reynolds did not sustain any injuries, Reynolds testified that he sustained a split lip, a knot on the left side of his head, and a gash on his forehead.[1] Thus,

---

[1] The Court notes Defendants' argument that the photographs of Plaintiff's injuries demonstrate that he sustained minimal to no injuries. (Def. Ex. H.) However, the photographs submitted by Defendants, which are purportedly copies of the originals, are indiscernible due to their poor

the Court finds that genuine issues of material fact exist regarding Plaintiff's compliance with Defendants' directives, the extent of force used by Defendants, and the degree of Plaintiff's injuries. *See Bell v. Kansas City Police Dep't*, 635 F.3d 346, 347 (8th Cir. 2011) (courts should neither weigh evidence nor make credibility determinations when ruling on motion for summary judgment).

As to Defendants' qualified immunity argument, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation and citation omitted). As discussed above, there is affirmative evidence in the record that raises genuine issues of material fact regarding Defendants' use of force against Reynolds. In addition, the law is well-established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause. *See Wilkins*, 559 U.S. at 37; *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) ("The Eighth Amendment bars correctional officers from imposing unnecessary and wanton paint on inmates…"). Defendants are therefore not entitled to summary judgment on the grounds of qualified immunity.

## **CONCLUSION**

Accordingly,

---

quality; thus, the Court cannot determine the extent of Plaintiff's injuries, or lack thereof, based upon the photographs.

**IT IS HEREBY ORDERED** that Defendants Ronald Helms's and James Rodgers's Motion for Summary Judgment (ECF No. 45) is **DENIED**.

Dated this  11th   day of May, 2017.

/s/    Jean C. Hamilton
UNITED STATES DISTRICT JUDGE